IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| JIM AND DEBRA EVANS; and JIM AND DEBRA EVANS, as Guardians Ad Litem for JUSTIN EVANS, a minor,<br><br>Plaintiffs,<br><br>v.<br><br>TAYLORSVILLE CITY, a body politic; LARRY MARX, Taylorsville City Chief of Police; CASEY DAVIES, Taylorsville City Police Officer; ANDREA DIRKER; ANTONIA LENNING; and DAVID LENNING,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:06-cv-00631-TS-PMW<br><br>District Judge Ted Stewart<br><br>Magistrate Judge Paul M. Warner |

This matter was referred to Magistrate Judge Paul M. Warner by District Judge Ted Stewart pursuant to 28 U.S.C. § 636(b)(1)(A). Before the court are (1) Taylorsville City, Larry Marx, and Casey Davies's ("Davies") motion to disqualify counsel for Jim and Debra Evans, both individually and in their capacity as guardians ad litem for Justin Evans (collectively, "Plaintiffs"), Jerrald D. Conder ("Conder");[1] (2) Andrea Dirker ("Dirker"), Antonia Lenning, and David Lenning's motion to join the above-referenced motion to disqualify Conder;[2] (3)

---

[1] *See* docket no. 21.

[2] *See* docket nos. 23, 24.

Plaintiffs' motion to withdraw and/or amend certain responses to Taylorsville City's requests for admission;[3] and (4) Plaintiffs' motion to amend the scheduling order.[4]

The parties came before the court for oral argument on those motions on August 14, 2007.[5] Conder appeared on behalf of Plaintiffs. Lisa R. Petersen appeared on behalf of Taylorsville City, Larry Marx, and Davies. Trent P. Belliston appeared on behalf of Dirker, Antonia Lenning, and David Lenning.

Prior to that hearing, the court carefully considered the parties' written submissions on each of the above-referenced motions. At the conclusion of the hearing, the court ordered additional briefing on an issue raised during oral argument concerning the motion to disqualify Conder.[6] After receiving those additional briefs,[7] the court has carefully reviewed and considered them. In addition, the court further considered the parties' written submissions on each motion and the arguments presented by counsel during the hearing. Now being fully advised, the court is prepared to rule on the motions.

## I.  Motion to Join

As a preliminary matter, Dirker, Antonia Lenning, and David Lenning's motion to join Taylorsville City, Larry Marx, and Davies's motion to disqualify Conder is **GRANTED**.

---

[3] *See* docket no. 25.

[4] *See* docket no. 31.

[5] *See* docket no. 38.

[6] *See id*.

[7] *See* docket nos. 40, 41, 42.

Accordingly, the court will treat the motion to disqualify as though it had been brought collectively by Taylorsville City, Larry Marx, Davies, Dirker, Antonia Lenning, and David Lenning (collectively, "Defendants").

## II.  Motion to Disqualify Plaintiffs' Counsel

The control of attorneys' conduct in litigation is within the supervisory powers of the district court and, therefore, is a matter of judicial discretion.  *See Cole v. Ruidoso Mun. Sch.*, 43 F.3d 1373, 1383 (10th Cir. 1994).  "Motions to disqualify are governed by two sources of authority.  First, attorneys are bound by the local rules of the court in which they appear.  Federal district courts usually adopt the Rules of Professional Conduct of the states where they are situated."  *Id.*; *see* DUCivR 83-1.1(h) (providing that all attorneys practicing before this court "are governed by and must comply with the rules of practice adopted by this court, and unless otherwise provided by [the Rules of Practice for the United States District Court for the District of Utah], with the Utah Rules of Professional Conduct, as revised and amended and as interpreted by this court").

> Second, because motions to disqualify counsel in federal proceedings are substantive motions affecting the rights of the parties, they are decided by applying standards developed under federal law.  Therefore, motions to disqualify are governed by the ethical rules announced by the national profession and considered in light of the public interest and the litigants' rights.

*Cole*, 43 F.3d at 1383 (quotations and citations omitted).

Further guidance on disqualification of counsel is provided in *Parkinson v. Phonex Corp.*, 857 F. Supp. 1474 (D. Utah 1994) (mem.).  In *Parkinson*, the court refused to disqualify the

3

plaintiffs' counsel and, in doing so, set out the following foundational concepts for evaluation of motions to disqualify.  *See id*. at 1474-78.

Attorneys before this court are bound by the Utah Rules of Professional Conduct, *see* DUCivR 83-1.1(h), and those rules may be relevant to the analysis of a motion to disqualify. However, the fact that an attorney's conduct violates any one of those rules "does not require disqualification of counsel as a matter of course."  *Id*. at 1476 (quotations and citations omitted). Standards for professional conduct meant to be enforced by entities governing the practice of law cannot be enforced effectively by the court during litigation because the considerations in each forum are different.  *See id*.  Courts cannot hope to "correct all possible ethical conflicts" because "this laudable goal cannot be attained through rulings in the course of litigation without inviting the wholesale filing of motions for tactical reasons.  The result would be needless disruption and delay of litigation, thereby impairing the efficient administration of justice."  *Id*. (quotations and citations omitted).  Therefore, "[w]here a threat of tainting the trial does not exist, . . . the litigation should proceed, [with] the remedy for unethical conduct lying in the disciplinary machinery of the state and federal bar."  *Id*. (quotations and citations omitted).

Disqualification should be ordered "only upon a finding that presence of a particular counsel will taint the trial by affecting his or her presentation of a case."  *Id*. (quotations and citations omitted).  "The sanction of disqualification of counsel in litigation should be measured by the facts of each particular case . . . ."  *Id*. (quotations and citations omitted).  In undertaking this fact-sensitive analysis, the *Parkinson* court provided several factors to be considered, *see id*., which will be covered in subsection D., below.

In this case, Defendants argue that Conder should be disqualified because his representation of Plaintiffs violates rules 1.7, 1.9, and 3.7 of the Utah Rules of Professional Conduct and creates an "overwhelming appearance of impropriety."

### A. Rule 1.7

Defendants assert, and Conder does not deny, that Conder serves as counsel for the Utah State Fraternal Order of Police (the "FOP"), an organization of which two Defendants, Davies and Dirker, are dues-paying members. Defendants also assert, and again Conder does not deny, that Conder is one of several attorneys approved by the FOP to represent dues-paying members in suits, like the instant case, brought against those members for acts occurring within the scope of their duties as law enforcement officers. Based on these assertions, Defendants argue that Conder's representation of Plaintiffs in this case violates rule 1.7 because it is directly adverse to the interests of Davies and Dirker, whom Defendants view as current clients of Conder by way of their membership in the FOP.

In relevant part, rule 1.7 provides that

> a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if . . . [t]he representation of one client will be directly adverse to another client; or . . . [t]here is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

Utah R. Prof. Conduct 1.7(a)(1), (a)(2).

The court agrees with Defendants that Conder's decision to represent Plaintiffs in this case is peculiar. Given his role as local counsel for the FOP and his status as approved counsel

for dues-paying members of the FOP, it seems curious that he would choose to represent Plaintiffs in their suit against Davis and Dirker, who are both active, dues-paying members of the FOP.

All of this notwithstanding, the court is not convinced that Conder's decision to represent Plaintiffs rises to the level of a violation of rule 1.7. Although it is clear that Conder is counsel for the FOP as an organization, the court is not persuaded that this role compels the conclusion that Conder is counsel for each and every FOP member in matters unrelated to FOP business. While Conder may have made a questionable professional decision in choosing to represent Plaintiffs in this case, the court is not persuaded that said decision violates rule 1.7.

### B.  Rule 1.9

Defendants claim that Conder's representation of Dirker in a previous matter creates a conflict of interest in this case. Conder admits that he represented Dirker in a previous, unrelated matter involving Dirker's former boyfriend and that boyfriend's former spouse. While it appears that Conder may have also had a personal relationship with Dirker, his representation of her was limited to drafting one letter on her behalf.

In relevant part, rule 1.9 provides that

> [a] lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter . . . use *information relating to the representation* to the disadvantage of the former client except as these [r]ules would permit or require with respect to a client, or when the information has become generally known.

Utah R. Prof. Conduct 1.9(c), (c)(1) (emphasis added).

Again, the court finds Conder's decision to represent Plaintiffs in this matter against Dirker, a former friend and client, to be a curious and professionally questionable choice. However, it appears that most, if not all, of the information relevant to this matter that Conder learned from Dirker was obtained by way of their personal relationship, not through Conder's representation of Dirker. Because rule 1.9 applies only to the use of "information relating to the representation," *id*., the court is not persuaded that Conder's representation of Plaintiffs in this case rises to the level of a violation of rule 1.9.

### C.  Rule 3.7

Defendants argue that Conder's knowledge of this matter based on his prior personal relationship with Dirker makes him a "necessary witness" in this case. Utah R. Prof. Conduct 3.7(a) (providing that "[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness," unless certain enumerated exceptions are met). Plaintiffs correctly note that this argument was raised for the first time during oral argument.

While it is true that Conder may have some knowledge of this case, Defendants have not persuaded the court that Conder is a "necessary witness." *Id*. Defendants note that Conder has exclusive knowledge of his dealings with Dirker, but Defendants have not demonstrated that said knowledge is necessary to their case. Although a close issue, the court does not find that Conder's representation of Plaintiffs in this case amounts to a violation of rule 3.7.

### D.  *Parkinson* Factors

As previously noted, while the Utah Rules of Professional Conduct are relevant to the court's analysis of Defendants' motion to disqualify, they are not the standard for

disqualification. *See Parkinson*, 857 F. Supp. at 1476. *Parkinson* sets forth the following factors to be considered when analyzing a motion to disqualify: (1) the egregiousness of the violation, (2) the presence or absence of prejudice to the other side, (3) whether and to what extent there has been a diminution of effectiveness of counsel, (4) hardship to the other side, and (5) the stage of trial proceedings. *See id*. This list of factors is not exhaustive, but instead is merely illustrative of the facts that may be pertinent. *See id*. The court reiterates that each case must be examined "on its own specific facts" and that "[t]he essential issue to be determined in the context of litigation is whether the alleged misconduct taints the lawsuit." *Id*. (quotations and citations omitted).

In *Parkinson*, the court refused to disqualify the plaintiffs' law firm even though one of its attorneys had been engaged in a month-long estate planning effort with a defendant. *See id*. at 1475. As soon as the simultaneous conflicting representation was discovered, the estate planning effort was terminated. *See id*. The court verified there had been no sharing of information between the two attorneys and noted that any information the estate planner received was "readily discoverable through other means." *Id*. at 1477. The court also noted that the situation did "not involve the type of [egregious] conduct generally associated with the harsh sanction of disqualification." *Id*. Even though the plaintiffs' counsel's actions had violated certain ethical rules, the court concluded that said violation did not "taint the lawsuit" or "diminish counsel's effectiveness." *Id*. The court also determined that "the interests of the parties[,] . . . the legal profession[,] and the intent of the Rules of Professional Conduct" were best served by denying the defendants' motion to disqualify. *Id*. at 1477-78.

A similar result was reached in *Poly Software International, Inc. v. Su*, 880 F. Supp. 1487 (D. Utah 1995). In that case, the defendants' attorney had conducted an initial interview with the plaintiff's principal on the very matter before the court. *See id*. at 1489, 1491. The defendants' counsel claimed that he had conducted a thirty minute initial interview with the plaintiff's principal, but the plaintiff later chose to retain other counsel. *See id*. The plaintiff's principal, on the other hand, claimed that the meeting was over an hour long and that he had specifically discussed the evidence relevant to the proposed litigation, including the potential strengths and weaknesses of his case and certain documentary evidence. *See id*. at 1489. Notwithstanding the disclosure of all of this information, the court refused to disqualify the defendants' counsel. *See id*. at 1491.

Like the court in *Parkinson*, this court is not convinced that Conder's representation of Plaintiffs in this case involves "the type of [egregious] conduct generally associated with the harsh sanction of disqualification." *Parkinson*, 857 F. Supp. at 1477. The type of information Dirker shared with Conder appears to be somewhat similar to the type of information shared in *Poly Software*, where the court denied a motion to disqualify. *See Poly Software*, 880 F. Supp. at 1489, 1491. Further, it does not appear that counsel's effectiveness has been diminished. *See Parkinson*, 857 F. Supp. at 1476. The court recognizes that there may be some prejudice and hardship to Defendants in allowing Conder to remain as counsel for Plaintiffs. However, it is not lost on the court that Defendants' counsel likely knew of the basis for their motion to disqualify very early on in this case, yet waited for nearly a year after this case was initiated before bringing their motion to disqualify. In sum, the court concludes that Conder's representation of Plaintiffs

in this case does not taint the lawsuit.  The court also believes that the interests of the parties, particularly at this stage of the case, are best served by denying Defendants' motion to disqualify.

Based on the foregoing, Defendants' motion to disqualify Conder is **DENIED**.

### III. Motion to Withdraw/Amend Responses to Requests for Admission

In this motion, Plaintiffs ask the court to allow them to withdraw and/or amend certain responses to Taylorsville City's requests for admission.  Plaintiffs admit that the matters contained in said requests for admission were deemed admitted when they did not provide their responses to the requests within thirty days, as required by rule 36(a) of the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 36(a).  Plaintiffs attribute this failure, in part, to a "medical condition experienced by" Conder.

Pursuant to rule 36(b), once a matter is admitted, it "is conclusively established unless the court on motion permits withdrawal or amendment of the admission."  Fed. R. Civ. P. 36(b). The court may permit a party to withdraw or amend an admission when (1) "the presentation of the merits of the action will be subserved thereby" and (2) "the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits."  *Raiser v. Utah County*, 409 F.3d 1243, 1246 (10th Cir. 2005) (quotations and citation omitted).

The court is persuaded that both elements set forth in *Raiser* have been satisfied.  *See id*. The merits of the action will be subserved by allowing Plaintiffs to amend and/or withdraw the admissions in question.  *See id*.  In addition, any prejudice to Defendants is slight and should not have any meaningful impact on their ability to maintain their defense.  *See id*.

10

Accordingly, Plaintiffs' motion to withdraw and/or amend certain responses to Taylorsville City's requests for admission is **GRANTED**.  Plaintiffs may withdraw and/or amend only the responses identified in their motion.  Said responses are due on or before October 15, 2007.

### IV.  Motion to Amend Scheduling Order

Plaintiffs' motion seeks to extend the deadlines in the current scheduling order by 180 days.  Plaintiffs have indicated that Defendants were willing to agree to a 90-day extension of those deadlines, but were unwilling to agree to the Plaintiffs' requested extension of 180 days.  Defendants urge the court to deny Plaintiffs' motion.

The court is willing to provide Plaintiffs with the benefit of the doubt in this case.  While it appears that Conder has not been very attentive or diligent with respect to the deadlines set in the scheduling order, the court will allow Plaintiffs an extension of those deadlines.  Although the requested extension of 180 days seems unusually large, the court views it as appropriate in this instance given the time it has taken to brief and resolve the motions addressed in this order and the fact that many of the relevant deadlines (including the fact discovery deadline) have passed.  However, Plaintiffs and Conder should be aware that absent a showing of compelling need or extraordinary circumstances, those deadlines will not be extended any further.

Accordingly, Plaintiffs' motion to amend the scheduling order is **GRANTED**.  After entry of this order, the court will enter an amended scheduling order setting forth the new deadlines and trial date for this case.

In summary, **IT IS HEREBY ORDERED:**

1. Dirker, Antonia Lenning, and David Lenning's motion to join[8] Taylorsville City, Larry Marx, and Davies's motion to disqualify Conder is **GRANTED**.

2. Defendants' motion to disqualify Conder [9] is **DENIED**.

3. Plaintiffs' motion to withdraw and/or amend certain responses to Taylorsville City's requests for admission[10] is **GRANTED**. Plaintiffs may withdraw and/or amend only the responses identified in their motion. Said responses are due on or before October 15, 2007.

4. Plaintiffs' motion to amend the scheduling order[11] is **GRANTED**. After entry of this order, the court will enter an amended scheduling order setting forth the new deadlines and trial date for this case.

**IT IS SO ORDERED**.

DATED this 28th day of September, 2007.

BY THE COURT:

*[signature]*

PAUL M. WARNER
United States Magistrate Judge

---

[8] *See* docket no. 23.

[9] *See* docket nos. 21, 24.

[10] *See* docket no. 25.

[11] *See* docket no. 31.