IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| JIM EVANS, DEBRA EVANS, and JIM AND DEBRA EVANS, as Guardians Ad Litem for J.E., a minor,<br><br>    Plaintiffs,<br><br><br><br><br><br><br><br><br><br><br>            vs.<br><br><br><br>TAYLORSVILLE CITY, LARRY MARX, and CASEY DAVIES,<br><br>        Defendants. | MEMORANDUM DECISION AND ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND MOTION TO AMEND/CORRECT COMPLAINT, GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT, AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br><br><br><br><br>Case No. 2:06-CV-631 TS |

This case is a case against Taylorsville City, a City Police Officer, and the City Police Chief for alleged violations of the Utah and United States' Constitutions.  Defendants Move for Summary Judgment, for Partial Summary Judgment, and to Strike Plaintiffs' Memorandum in Opposition. Plaintiffs Move to Amend/Correct Complaint and for Partial Summary Judgment.  Defendants argue

that Plaintiffs have failed to establish that Plaintiffs' state or federal constitutional rights were violated or that Defendants used the courts for an ulterior and improper purpose.  Defendants also argue that Plaintiffs' affidavits in response to the Motion for Summary Judgment should be stricken because they are legally insufficient and are "rife with hearsay."[1]  Defendants argue that the official capacity claims against the two individual defendants are redundant with the claim against the City of Taylorsville and should therefore be dismissed.  Plaintiffs argue that, as a matter of law, Defendant Davies did not have probable cause to arrest Plaintiffs.  Plaintiffs also request permission to amend the Complaint to add as parties one additional police officer for making a false affidavit and the Taylorsville City Attorney for retaliatory prosecution.

For the reasons described below, the Court will dismiss Plaintiffs' Utah Constitution and abuse of process claims against all Defendants.  The Court will also dismiss Plaintiffs' § 1983 claims against Defendants Taylorsville City and Larry Marx, and will dismiss Plaintiffs' official capacity claims under § 1983 against Casey Davies.  Finally, the Court will  dismiss as Plaintiffs Jim Evans and Jim and Debra Evans as guardians ad litem for Justin Evans, and will deny Plaintiffs' Motion to Amend/Correct Complaint.

## I.  STANDARD OF REVIEW

Summary judgment is proper if the moving party can demonstrate that there is no genuine issue of material fact and it is entitled to judgment as a matter of law.[2]  In considering whether genuine issues of material fact exist, the Court determines whether a reasonable jury could return

---

[1]Docket No. 84 at 2.

[2]*See* Fed. R. Civ. P. 56(c).

a verdict for the nonmoving party in the face of all the evidence presented.[3]  The Court is required

to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[4]

"Conclusory allegations, however, do not establish an issue of fact under Rule 56 [of the Federal

Rules of Civil Procedure]."[5]

## II.  BACKGROUND

This case centers around ownership of a dog named Oscar.  Plaintiffs and co-Defendant

Andrea Dirker all claim to be Oscar's owner.  Ms. Dirker was living with Chris Eyring, a friend of

the Evans, when Oscar came to live with Mr. Eyring from the Evans.  Ms. Dirker took Oscar with

her when she moved out of Eyring's home in the fall of 2005.  On or about October 29, 2005, Mr.

Evans reported Oscar stolen to the Murray and Taylorsville City Police Departments, but was

informed that he should resolve the ownership issues in civil court.

On May 11, 2006, Mr. Evans and his son went to Ms. Dirker's residence and took Oscar.

Andrea Lenning, Ms. Dirker's mother, filed a stolen property report with the Taylorsville City Police

Department claiming that Oscar had been stolen.  Defendant Davies, a Taylorsville police officer,

was assigned to investigate the reported theft.  Ms. Dirker indicated that the Evans owned a vehicle

similar to the one Ms. Lenning saw being driven away by the individuals who had taken Oscar.

Davies proceeded to the Evans' residence, where Ms. Evans refused to talk about Oscar.  Ms.

Evans instead requested that Davies discuss matters with Mr. Evans.  While at the Evans' residence,

---

[3]*See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[4]*See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Southwestern Bell Tel. Co.,* 925 F.2d 1288, 1292 (10th Cir. 1991).

[5]*Bruner v. Baker*, 506 F.3d 1021, 1025 (10th Cir. 2007).

Davies noticed signs of the presence of a dog.  Davies indicated to the Evans that they should return Oscar to resolve the criminal investigation and pursue ownership of Oscar in civil court.  During, and then shortly after, Davies' visit to the Evans' residence, Davies and Mr. Evans spoke on the telephone, and Mr. Evans admitted that he had taken the dog.  Mr. Evans also told Davies that if he ever returned to the Evans' residence, he would need a search warrant.

After failing to convince the Evans to return Oscar, Davies obtained a search warrant for the Evans' residence, in order to look for Oscar.  Upon arriving at the Evans' residence to execute the search warrant, Davies and other officers noticed a dog that matched Oscar's description.  That dog, however, was not Oscar and police did not find Oscar during their search.  At some point during the execution of the search warrant, Ms. Evans told Davies that Oscar was not at the Evans' residence.  Detectives indicate that Ms. Evans refused to tell them where Oscar was being kept, but Ms. Evans argues that she told Davies that she did not know where Oscar was being kept.  Davies states that he advised Ms. Evans that she could be arrested for interfering with the investigation and Ms. Evans said that would be fine, but that she wanted to call her husband.  Davies informed her that she could call from the jail and arrested Ms. Evans.

After Ms. Evans' arrest, her daughter volunteered information on where Oscar was being kept.  After being booked into jail, Ms. Evans was confronted with the information, and Ms. Evans confirmed Oscar's likely location.  Ms. Evans also indicated that Mr. Evans had told her not to tell anyone where Oscar was.

Eventually, Mr. Evans agreed to return Oscar in order to obtain Ms. Evans' release.  Oscar was returned later the same day and Ms. Evans was released from jail after six hours.  No further charges were brought against Ms. Evans, but charges were eventually brought against Mr. Evans and his son by the Taylorsville City Attorney.  Those charges were eventually dropped.

4

Plaintiffs brought this suit against Taylorsville City (the "City"), Taylorsville Chief of Police Larry Marx, Davies, Ms. Dirker, and the Lennings.  All claims against Ms. Dirker and the Lennings have since been settled, leaving the following causes of action against the City, Marx, and Davies: (1) unlawful arrest of Ms. Evans, in violation of 42 U.S.C. § 1983; (2) unlawful detention and false imprisonment of Ms. Evans, in violation of 42 U.S.C. § 1983; (3) intentional infliction of emotional distress on all Plaintiffs, in violation of Article I, Section 9 of the Utah Constitution; (4) false arrest of Ms. Evans, in violation of Article I, Section 9 of the Utah Constitution; (5) reckless police work in the arrest and detention of Ms. Evans, in violation of Article I, Section 9 of the Utah Constitution; and (6) abuse of process in the arrest of Ms. Evans and bringing charges against Mr. Evans and his son, and in "intimidating and threatening [Mr.] Evans with further arrests and search warrants if he did not return 'Oscar' to [Ms.] Dirker."[6]  Underlying all of Plaintiffs' claims is the assertion that Davies and other officers pursued the return of Oscar as a criminal matter either because Ms. Dirker is a police officer, though not employed by Taylorsville Police Department, or because Davies was friends with either Ms. Dirker or her parents.

### III.  MOTION FOR SUMMARY JUDGMENT

A.      CAUSES OF ACTION UNDER § 1983

A claim under § 1983 must allege (1) the violation of a right secured by the Constitution and laws of the United States (2) committed by a person acting under color of state law.[7]  Plaintiffs allege that Davies, and by extension Marx and the City, violated Ms. Evans' federally protected

---

[6]Docket No. 1 at 10.

[7]*Bruner*, 506 F.3d at 1025-26.

constitutional rights by arresting and detaining her for obstruction of justice.[8]  Specifically, Plaintiffs

allege that Ms. Evans was arrested and detained without probable cause, in violation of the Fourth

and Fourteenth Amendments to the United States Constitution.[9]  Neither party disputes that Davies

was acting under color of state law, so the Court must focus on whether Davies had probable cause

to arrest and detain Ms. Evans.[10]

    1.    *Unlawful Arrest*

"When an officer has probable cause to believe a person committed even a minor crime in

his presence, . . . [t]he arrest is constitutionally reasonable."[11]  "Probable cause exists if the facts and

circumstances known to the officer warrant a prudent man in believing that the offense has been

---

[8]The Court notes that the Complaint is not clear as to whether the § 1983 claims are against Davies and Marx in their individual capacities, their official capacities, or both. However, the Court finds that a reasonable interpretation of the Complaint can support claims against both Davies and Marx in both their individual and official capacities.

[9]In their memoranda and at an April 13, 2009 hearing on these motions, Plaintiffs raise a number of additional complaints against Davies, including that Davies turned a civil matter over custody into a criminal matter in order to unlawfully deprive the Evans of Oscar and that Davies lied on his affidavit for a search warrant.  The accuracy of Plaintiffs arguments is hotly disputed by Defendants, but even if accepted as true, those arguments are irrelevant to the question of whether Plaintiffs § 1983 claims can survive summary judgment.  Plaintiffs' Complaint alleges that Davies unlawfully arrested and detained Ms. Evans.  Thus, the only question before the Court on Plaintiffs' § 1983 actions are whether Davies had probable cause to arrest Ms. Evans.

[10]Much of Plaintiffs' Memorandum in Opposition, Docket No. 77, focuses on the later charges against Mr. Evans and the Evans' teenage son.  However, the § 1983 complaints brought against Defendants are based solely on the arrest of Ms. Evans, so arguments related to the later charges are irrelevant to a determination of whether Defendants are entitled to summary judgment on Plaintiffs' § 1983 claims.  Plaintiffs' abuse of process claims are expressly brought under state law.  *See* Docket No. 1 at 9.

[11]*Buck v. City of Albuquerque*, 549 F.3d 1269, 1281 (10th Cir. 2008) (quoting *Virginia v. Moore*, 128 S.Ct. 1598, 1604 (2008)).

committed."[12]  The inquiry must focus on the "reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest,"[13] and is, generally, a question for the jury.[14]

Relative to whether Davies had probable cause to arrest Ms. Evans for interference with an investigation, the following facts are undisputed: (1) Mr. Evans admitted to taking Oscar from Ms. Dirker's residence; (2) Davies, during a consensual entry into the Evans' residence prior to execution of the search warrant, viewed dog related items, and there is no evidence that Davies was ever informed, prior to execution of the search warrant, that the Evans had another dog; (3) Ms. Evans refused to talk about Oscar with Davies; (4) Davies told the Evans that the police considered the question of rightful ownership to be a civil matter, but that he was required to pursue the criminal complaint for theft; (5) Mr. Evans categorically refused to return Oscar, and told Davies that if he ever returned to the Evans' residence that he would need a search warrant; (6) During the execution of the search warrant, Ms. Evans told Davies that Oscar was not being kept at the house; (7) Ms. Evans did not tell Davies where Oscar was being kept; (8) Davies told Ms. Evans that she could be arrested if she continued to refuse to cooperate with the investigation; (9) Ms. Evans still did not tell Davies where Oscar was being kept; and (10) Davies arrested Ms. Evans for obstruction of justice.

Under Utah law, an individual obstructs justice when, "with intent to hinder, delay, or prevent the investigation . . . of any person regarding conduct that constitutes a criminal offense: . . . (b) prevents by . . . deception [] any person from performing any act that might aid in the discovery, apprehension, prosecution, conviction, or punishment of any person; . . . or (i) provides

---

[12]*Id.* (quoting *Henry v. United States*, 361 U.S. 98, 102 (1959)).

[13]*Id.* (quoting *Davenpeck v. Alford*, 543 U.S. 146, 152 (2004)).

[14]*DeLoach v. Bevers*, 922 F.2d 618, 623 (10th Cir. 1990).

false information regarding a suspect, a witness, the conduct constituting an offense, or any other material aspect of the investigation."[15]

Davies was accompanied by a fellow officer, and both have submitted affidavits in which they state that Ms. Evans refused to disclose Oscar's location, implying that she knew, but would not tell Davies, where Oscar was being kept. Ms. Evans, however, affirms in her affidavit that she told Davies that she did not know where Oscar was being kept.

The Court finds that there is a genuine issue of material fact regarding the existence of probable cause for the arrest of Ms. Evans for obstruction of justice. The undisputed facts indicate that Ms. Evans likely did know where Oscar was being kept. Specifically, Ms. Evans' daughter told police, shortly after Ms. Evans' arrest, where Oscar was being kept, and when confronted with the daughter's revelation, Ms. Evans indicated that she knew that Oscar had been kept at the location indicated by the daughter, off-and-on, for the two weeks previous to the execution of the search warrant. However, there are genuine issues of material fact as to whether Davies knew, at the time of Ms. Evans' arrest, that she was lying regarding her knowledge of Oscar's whereabouts. As indicted, Ms. Evans has stated that at the time of her arrest she told the officers that she did not know where Oscar was. The later revelation of Ms. Evans' likely deception is irrelevant to the question of whether, at the moment of Ms. Evans' arrest, Davies had probable cause to arrest her. The Court will, therefore, deny Defendants' Motion for Summary Judgment as to Plaintiffs' § 1983 claim against Davies for false arrest.

Plaintiffs, however, have failed to provide any evidence supporting their allegations that Taylorsville City or Marx failed to adequately supervise Davies. Specifically, only Davies and

---

[15]Utah Code Ann. § 76-8-306(1).

another officer were present when Ms. Evans was arrested and Plaintiffs have failed to make the requisite showing of an "affirmative link" between the alleged failure to supervise by Marx and the City and the arrest of Ms. Evans.[16]   Therefore, while there is a genuine issue of material fact regarding whether Davies had probable cause to arrest Ms. Evans, there are no genuine issues of material fact regarding the alleged failure by Marx and Taylorsville City to supervise Davies and the Court will grant Defendants' Motion for Summary Judgment as to Plaintiffs' § 1983 claim against Marx and Taylorsville City for false arrest.

      2.    *Unlawful Detention/False Imprisonment*

A defendant has a claim for unlawful detention when she has been "imprisoned without legal process."[17]  Thus, the question before the Court on Plaintiffs' second cause of action is similar to that posed by Plaintiffs' first cause of action, namely whether Davies had probable cause to detain Ms. Evans.  As discussed above, there is a genuine issue of material fact regarding the existence of probable cause to detain Ms. Evans for obstruction of justice, and Defendants' Motion for Summary Judgment will be denied as to Plaintiffs' § 1983 claim for unlawful detention.

However, Plaintiffs have failed to provide any evidence of an affirmative link between the alleged failure to supervise on the part of the City and Marx and the allegedly unlawful detention of Ms. Evans.  Therefore, while there is a genuine issue of material fact regarding whether Davies had probable cause to detain Ms. Evans, there are no genuine issues of material fact regarding the alleged failure by Marx and Taylorsville City to supervise Davies and the Court will grant

---

[16]*Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008).

[17]*Mondragon v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008).

Defendants' Motion for Summary Judgment as to Plaintiffs' § 1983 claim against Marx and Taylorsville City for unlawful detention.

The issue of probable cause by Davies in the arrest and detention of Ms. Evans is also the subject of Plaintiffs' Motion for Partial Summary Judgment and the Court will deny Plaintiffs' Motion for Partial Summary Judgment for the same reasons.

B.      CAUSES OF ACTION UNDER UTAH CONST. ART. I, SEC. 9

Plaintiffs, in their third, fourth and fifth causes of action, argue that the investigation of the Evans, the arrest and detention of Ms. Evans, and the charging of Mr. Evans and the Evans' teenage son were violations of Article I, Section 9 of the Utah Constitution.  That provision states as follows: "Excessive bail shall not be required; excessive fines shall not be imposed; nor shall cruel and unusual punishments be inflicted.  Persons arrested or imprisoned shall not be treated with unnecessary rigor."  Specifically, Plaintiffs argue that Defendants' actions, generally, constituted intentional infliction of emotional distress and reckless police work, and that Ms. Evans' arrest constituted false arrest.  Nothing in the Complaint specifies which clause of Section 9 was violated, but there are no allegations of excessive bail or fines, so the Court will focus on the applicability of the cruel and unusual punishment and unnecessary rigor clauses.

1.      *Cruel and Unusual Punishment*

Criminal punishment is cruel and unusual under the Utah state constitution if it is so disproportionate to the offense committed that it shocks the moral sense of all reasonable men as to what is right and proper under the circumstances.[18]  Plaintiffs' claims under the cruel and unusual punishment clause of the Utah constitution suffer from the fact that there are neither allegations nor

---

[18]*State v. Lafferty*, 20 P.3d 342, 365 (Utah 2001).

factual support for the notion that the criminal penalties inflicted on the Evans were disproportionate to the crimes which they allegedly committed.

Plaintiffs' Complaint alleges that Ms. Evans was detained by the Taylorsville Police Department, and the undisputed facts indicate that the time period of incarceration was approximately six hours.  Beyond the time period of incarceration, however, the Complaint and Plaintiffs' other filings with the Court indicate only that Ms. Evans cried during her incarceration. No allegation or fact exists to indicate that Davies or any other Taylorsville police officer did anything to make Ms. Evans cry other than to arrest her.  She was held for a limited time and was released as soon as Mr. Evans agreed to return Oscar, at which point the investigation was completed, and Ms. Evans would have been unable to further obstruct the investigation.  In short, there are no allegations that Ms. Evans actual incarceration was cruel and unusual, nor does Plaintiff offer any factual support for any such inference.

Plaintiffs' Complaint also alleges that Mr. Evans and the Evans' teenage son were the subjects of criminal charges.  However, Plaintiffs conceded at the April 13, 2009 hearing that Mr. Evans and the Evans' teenage son were charged but never arrested.  As they were never detained by police in connection with the charges filed against them, there are no criminal penalties inflicted upon them which may form the basis of a cruel and unusual punishment claim.

    2.    *Unnecessary Rigor*

The Utah Supreme Court has had little opportunity to define the contours of the unnecessary rigor clause.  In *Bott v. Deland*,[19] the court stated that "the guarantee against unnecessarily rigorous

---

[19]922 P.2d 732 (Utah 1996).

11

treatment extends both to prisoners and arrestees and protects them against unnecessary abuse."[20] The court noted that the definition of "abuse" "focuses on 'needlessly harsh, degrading, or dehumanizing' treatment of prisoners."[21]  The court noted that "the prohibition against unnecessary rigor does not allow police officers to commit assault and battery on a criminal suspect."[22]  The court went on to "emphasize that unnecessary rigor must be treatment that is clearly excessive or deficient and unjustified, not merely the frustrations, inconveniences, and irritations that are common to prison life."[23]

The Utah Supreme Court again attempted to define the unnecessary rigor clause in *Dexter v. Bosko*.[24]  The court stated that "[t]he prohibition against unnecessary rigor clearly includes intentional physical abuse of persons under arrest or imprisoned."[25]  The court went on to state that "[t]he unnecessary rigor clause of the Utah Constitution protects persons arrested or imprisoned from the imposition of circumstances on them during their confinement that demand more of the prisoner than society is entitled to require.  The restriction on unnecessary rigor is focused on the circumstances and nature of the process and conditions of confinement."[26]

---

[20]*Id*. at 737.

[21]*Id*. at 740 (quoting *Sterling v. Cupp*, 625 P.2d 123, 131 (Or. 1981)).

[22]*Id*. at 741.

[23]*Id*.

[24]184 P.3d 592 (Utah 2008).

[25]*Id*. at 596.

[26]*Id*.

12

As described above, Ms. Evans was incarcerated for only six hours, and Mr. Evans and the Evans' teenage son were never detained by police.  Moreover, there are neither allegations of, nor facts supporting, an inference that Ms. Evans' detention was, in any way, harsh, degrading, or dehumanizing.  Plaintiffs have therefore failed to provide factual support for their claims that they were subjected either to cruel and unusual punishment or unnecessary rigor, and the Court will grant Defendants' Motion for Summary Judgment on Plaintiffs' third, fourth, and fifth causes of action arising under Article I, Section 9 of the Utah Constitution.

C.    ABUSE OF PROCESS

Plaintiffs' sixth cause of action alleges a state law claim for abuse of process, in that Davies arrested Ms. Evans and assured the arrest of Mr. Evans and the Evans' teenage son for the "ulterior and improper purpose" of "using the criminal courts, not the purpose intended by law, to obtain possession of 'Oscar.'"[27]  "The misuse of process becomes actionable when it is used primarily to accomplish a purpose for which it is not designed . . . . To state a claim for abuse of process, a party must allege both an ulterior purpose and a wilful act in the use of the process not proper in the regular conduct of the proceeding."[28]  In order to satisfy the "wilful act" requirement, Plaintiffs "must point to conduct independent of legal process itself that corroborates the alleged improper purpose."[29]

Plaintiffs' Complaint alleges that the ulterior purpose behind Davies' actions was the desire to obtain possession of Oscar, but it is difficult to imagine what other purpose a law enforcement

---

[27]Docket No. 1, ¶ 58.

[28]*Hatch v. Davis*, 147 P.3d 383, 389 (Utah 2006) (internal quotes omitted).

[29]*Id.* At 390.

officer would have when presented with: (1) a report by Ms. Dirker that Oscar had been stolen; and (2) an admission by Mr. Evans that he was the individual who had taken Oscar.  Plaintiff does allege, and Defendants concede, that Plaintiffs were repeatedly told that the issue of Oscar's ownership was a civil, not a criminal matter.  However, that does not negate the fact that Davies had before him a report of criminal theft and an admission from the alleged thief.

It is true that Plaintiffs filed a complaint against Ms. Dirker for theft of Oscar, and had been told that the matter should be dealt with in civil court.  Plaintiffs add to that an allegation that the only reason Davies pursued the theft complaint was that Ms. Dirker was a police officer, apparently implying that Davies would not have taken the same actions in a situation where the alleged victim was not a fellow police officer.  Plaintiffs offer no factual support for these allegations, and can point to no conduct independent of the legal process which corroborates Davies alleged desire to help only fellow police officers.

There is some dispute as to whether Davies ever met Ms. Dirker prior to her filing the theft complaint.  Plaintiffs allege that Davies, while off-duty, provided security at a homeowner's meeting for the neighborhood where the Lennings reside, and that he was paid by Mr. Lenning for his services.  Defendants dispute that Davies ever received compensation, arguing that he was merely there to help his brother, also an off-duty police officer.  Regardless of whether he accepted compensation, there is no evidence that he had any personal or business connection with the Lennings or Ms. Dirker, so the argument is irrelevant.

Plaintiffs have failed to meet their burden on either factor, as they have failed to provide factual support either for an ulterior motive on the part of Davies or any improper wilful act in the use of the process.  The Court will therefore grant Defendants' Motion for Summary Judgment on Plaintiffs' sixth cause of action for abuse of process.

IV.  OTHER MOTIONS

A.    DEFENDANTS' MOTION TO STRIKE

Defendants argue that Plaintiffs' Memorandum in Opposition to their Motion for Summary Judgment contains affidavits which are "rife with hearsay."[30]  Plaintiffs did not file any opposition to the Motion to Strike.  While Defendants are correct that inadmissible hearsay evidence may not be used in an argument on summary judgment,[31] the Court is capable of simply disregarding that information, so it need not be stricken.  The Court will therefore deny the Motion to Strike.

B.    PLAINTIFFS' MOTION TO AMEND/CORRECT

Plaintiffs request permission to amend their Complaint to add claims against another police officer who was present when Davies arrested Ms. Evans and against the City Attorney who brought charges against Mr. Evans and the Evans' teenage son.  Fed.R.Civ.P. 15(a) provides that, after a responsive pleading has been served, "a party may amend its pleadings only with the opposing party's written consent or the court's leave."[32]  The Rule goes on to state that "[t]he court should freely give leave when justice so requires."[33]  The Supreme Court, in *Forman v. Davis*,[34] stated:

---

[30]Docket No. 84.

[31]*See Adams v. American Guarantee & Liability Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) ("In order to survive summary judgment, the content of the evidence that the nonmoving party points to must be admissible."); *Wright-Simmons v. City of Oklahoma City*, 155 F.3d 1264, 1268 (10th Cir. 1998) ("It is well settled in this circuit that we can consider only admissible evidence in reviewing an order granting summary judgment.") (internal quotations omitted); *Treff v. Galetka*, 74 F.3d 191, 195 (10th Cir. 1996) ("Inadmissible hearsay evidence in an affidavit will not defeat summary judgment.").

[32]Fed.R.Civ.P. 15(a)(2).

[33]*Id.*

[34]371 U.S. 178 (1962).

In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.—the leave sought should, as the rules require, be "freely given."[35]

As noted, the Supreme Court in *Forman* listed "undue delay" as one of the justifications for denying amendment. The Tenth Circuit has stated that "'[l]ateness does not of itself justify the denial of the amendment.'"[36] "However, '[a] party who delays in seeking an amendment is acting contrary to the spirit of the rule and runs the risk of the court denying permission because of the passage of time.'"[37] "The longer the delay, 'the more likely the motion to amend will be denied, as protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend.'"[38]

The Tenth Circuit "focuses primarily on the reasons for the delay."[39] The Tenth Circuit has "held that denial of leave to amend is appropriate 'when the party filing the motion has no adequate explanation for the delay.'"[40] "For example, courts have denied leave to amend where the moving party was aware of the facts on which the amendment was based for some time prior to the filing of

---

[35]*Id*. at 182.

[36]*Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205 (10th Cir. 2006) (quoting *R.E.B., Inc. v. Ralston Purina Co.*, 525 F.2d 749, 751 (10th Cir. 1975)).

[37]*Id*. (quoting 6 Wright, Miller & Kane, *Federal Practice and Procedure* § 1488 (2d ed. 1990)).

[38]*Id*. (quoting *Steir v. Girl Scouts of the USA*, 383 F.3d 7, 12 (1st Cir. 2004)).

[39]*Id*. at 1206.

[40]*Id*. (quoting *Frank v. U.S. West*, 3 F.3d 1357, 1365–66 (10th Cir. 1993)).

16

the motion to amend."[41]  "Courts will properly deny a motion to amend when it appears that the plaintiff is using Rule 15 to make the complaint a moving target, to salvage a lost case by untimely suggestion of new theories of recovery, to present theories seriatim in an effort to avoid dismissal, or to knowingly delay [] raising [an] issue until the eve of trial."

A court may also deny a motion for leave to amend when it would be futile.[42]  A proposed amendment is futile if the complaint, as amended, would be subject to dismissal.[43]  In considering a motion to dismiss under Fed.R.Civ.P. 12(b)(6), all well-pleaded factual allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to the nonmoving party.[44]  The Court will deny Plaintiffs' first proposed amendment because the City Attorney would be entitled to absolute prosecutorial immunity for his decision to bring criminal charges against Mr. Evans and his teenage son.[45]

The Court finds that Plaintiffs' second proposed amendment is untimely.  The Taylorsville City Police Officer whom Plaintiffs propose to add as a Defendant was present when Ms. Evans was arrested.  Plaintiffs therefore knew of her involvement in the arrest and provide no justification for their failure to name her as a defendant in the Complaint, except to note that she aided in the preparation of the affidavit for search warrant.  However, as noted above, the question before the Court is a narrow one regarding the existence of probable cause for the arrest of Ms. Evans.

---

[41]*Fed. Ins. Co. v. Gates Learjet Corp.*, 823 F.3d 383, 387 (10th Cir. 1987).

[42]*Anderson v. Suiters*, 499 F.3d 1228, 1238 (10th Cir. 2007).

[43]*Id.*

[44]*Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002).

[45]*Van De Kamp v. Goldstein*, 129 S.Ct. 855, 859-861 (2009).

17

Plaintiffs were aware when they filed their Complaint on July 31, 2006, that the other officer participated in the arrest of Ms. Evans, and their failure to move the Court to allow amendment of the Complaint until January 30, 2009, nearly thirty months to the date after filing the Complaint, constitutes undue delay, and exhibits potentially dilatory motive, by Plaintiffs.  The Court will therefore deny Plaintiffs' Motion to Amend/Correct.

C.    DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendants move the Court to grant partial summary judgment and dismiss the claims against Marx and Davies.  They argue that the claims are redundant with the identical claims brought concurrently against the City of Taylorsville.  As Defendants' Motion for Summary Judgment will be granted as to all claims against Marx, the Court need only address Defendants' Motion for Partial Summary Judgment as it relates to Davies.

As noted above, the Complaint is unclear regarding whether Marx and Davies are being sued in their individual or official capacities.  The Court, however, will construe the Complaint as containing causes of action against Davies in his official and individual capacity.  With regard to claims against Davies in his official capacity, the United States Supreme Court has been very clear that "an official capacity suit is, in all respects other than name, to be treated as a suit against the entity."[46]  As all claims against Taylorsville City will be dismissed, Plaintiffs cannot maintain an action against Davies in his official capacity.

Plaintiffs argue that dismissal is only appropriate if the employee being sued is a city officer, and cite to *Pembaur v. City of Cincinnati*.[47]  Plaintiffs' arguments, however, are without merit, for

---

[46]*Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Taylor*, 82 F.3d at 1564.

[47]475 U.S. 469 (1986).

the *Pembaur* Court was addressing the issue of whether tortious conduct by a city official could subject the municipality to vicarious liability under § 1983, and says nothing to contradict the *Graham* Court's holding that a suit against any municipal employee was a suit against the city.

Any official capacity claims against municipal employees are to be treated as claims against the municipality, Plaintiffs' arguments notwithstanding.  Because the Court has already held that Plaintiffs have failed to meet their burden with regard to their claims against Taylorsville City, the Court will grant Defendants' Motion for Partial Summary Judgment as to Plaintiffs § 1983 claims against Davies in his official capacity.  Defendants' arguments do not support a dismissal of Plaintiffs' § 1983 claims against Davies in his individual capacity, and the Court will deny Defendants' Motion as to Plaintiffs' § 1983 claims against Davies in his individual capacity.

## V.  CONCLUSION

The Court will dismiss all claims against Defendants Taylorsville City and Larry Marx, and will dismiss the official capacity claims against Defendant Davies.  No causes of action remain in which Plaintiffs Jim Evans and Jim and Debra Evans, as guardians ad litem for Justin Evans, have any claims.  The Court will therefore dismiss, as Plaintiffs, Jim Evans and Jim and Debra Evans, as guardians ad litem for Justin Evans.  Debra Evans will remain as a Plaintiff, with two § 1983 claims against Defendant Davies, in his individual capacity, for false arrest and unlawful detention.

It is therefore

ORDERED that Defendants' Motion for Summary Judgment (Docket No. 68) is GRANTED IN PART AND DENIED IN PART, as described above.  Plaintiffs Jim Evans and Jim and Debra Evans, as guardians ad litem for Justin Evans, are hereby dismissed as Plaintiffs.  It is further

ORDERED that Plaintiffs' Motion for Partial Summary Judgment (Docket No. 79) and Motion to Amend/Correct Complaint (Docket No. 80) are DENIED.  It is further

19

ORDERED that Defendants' Motion to Strike (Docket No. 83) is DENIED.  It is further

ORDERED that Defendants' Motion for Partial Summary Judgment (Docket No. 87) is

GRANTED IN PART AND DENIED IN PART, as described above.

DATED   May 11, 2009.

BY THE COURT:

_____

TED STEWART
United States District Judge